**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| DESERT ORCHID PARTNERS, L.L.C., individually and on behalf of all others similarly situated, | ) ) ) ) | 8:02CV553 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| TRANSACTION SYSTEMS ARCHITECTS, INC., WILLIAM E. FISHER, GREGORY J. DUMAN, DWIGHT G. HANSON, DAVID C. RUSSELL and EDARD FUXA, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| NANCY ROSEN, individually and on behalf Of herself and all others similarly situated, | ) ) ) | 8:02CV561 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| TRANSACTION SYSTEMS ARCHITECTS, INC., WILLIAM E. FISHER, GREGORY J. DUMAN, DWIGHT G. HANSON, DAVID C. RUSSELL and EDWARD FUXA, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on the defendants' Amended Motion to Quash and Motion for Protective Order (Filing No. 192 in case 8:02CV553; Filing No. 236 in case 8:02CV561). The defendants filed a brief (Filing No. 194 in case 8:02CV553; Filing No. 238 in case 8:02CV561) and an index of evidence (Filing No. 193 in case 8:02CV553; Filing No. 237 in case 8:02CV561) in support of the motion. The plaintiffs filed a brief (Filing No. 212 in case 8:02CV553; Filing No. 254 in case 8:02CV561) and an index of

evidence (Filing No. 213 in case 8:02CV553; Filing No. 255[1] in case 8:02CV561) in opposition to the motion. The defendants then filed a reply brief (Filing No. 218 in case 8:02CV553; Filing No. 260 in case 8:02CV561) with an index of evidence (Filing No. 219 in case 8:02CV553; Filing No. 261 in case 8:02CV561).

## BACKGROUND

The above-captioned cases were brought on behalf of the named plaintiffs and all other persons similarly situated against the defendant Transaction Systems Architects, Inc. (TSA) and certain of its officers and directors. The complaints in the cases allege securities fraud under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. §§ 78j(b) and 78t(a), Rule 10b-5 of the Exchange Act, and 17 C.F.R. § 240.10b-5. The Second Amended Complaint states the class is comprised of persons who purchased TSA common stock from January 21, 1999, through November 18, 2002, which is defined as "the class period." **See** Filing No. 98 in Case No. 8:02CV553; Filing No. 140 in Case No. 8:02CV561. The individually named defendants are corporate officers of TSA who are alleged to have had access to proprietary information about TSA and are alleged to have made comments regarding TSA's financial condition at various times during the class period, resulting in an artificial inflation of the price of TSA common stock. The plaintiffs claim they relied on the misleading press releases, public filings, and reports regarding the market for TSA common stock. The plaintiffs assert they were without knowledge of the wrongful conduct of the defendants at the time they purchased or acquired the TSA common stock.

The defendants seek to quash the Subpoena Duces Tecum and Notice of Deposition for David P. Stokes and for the court to enter a protective order preventing the deposition. The defendants state Mr. Stokes was TSA's Chief General Counsel from the early 1990s until April 2003. Based on his former position, the defendants contend Mr. Stokes possesses considerable information that is privileged and confidential. However,

---

[1] The plaintiffs did not file the affidavit of David J. Goldsmith in Case No. 8:02CV561 (Filing No. 255), but it was filed in Case No. 8:02CV553 (Filing No. 213) and need not be re-filed.

the defendants assert Mr. Stokes has very little, if any, non-privileged information which is relevant to this lawsuit. The defendants also argue the documents sought in the subpoena are either outside the class period or duplicative of documents already produced. As an alternative to quashing the subpoena, the defendants ask the court to limit the scope of the document production to those documents not already produced and limit the deposition to identified non-privileged topics.

## ANALYSIS

Federal Rules of Civil Procedure Rule 26(b)(1) defines the scope of discovery. It provides as follows.

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

**See** Fed. R. Civ. P. 26(b)(1). Protective orders may issue under Rule 26(c), which provides:

> Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>    (1) that the disclosure or discovery not be had;
>    (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; . . .
>    (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters[.]

**See** Fed. R. Civ. P. 26(c). Furthermore, pursuant to Rule 45, "the court by which a subpoena was issued shall quash or modify the subpoena if it (i) fails to allow reasonable

time for compliance; . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden." **See** Fed. R. Civ. P. 45 (c)(3)(A). "[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34" and is subject to the rules that apply to other methods of discovery. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003). With regard to protective orders, one district court has noted that the Eighth Circuit has offered criteria to consider when courts are requested to issue protective orders:

> Fed. R. Civ. P. 26(c) requires that "good cause" be shown for a protective order to be issued. The burden is therefore upon the movant to show the necessity of its issuance, which contemplates "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . ." Such determination must also include a consideration of the relative hardship to the non-moving party should the protective order be granted.

*DeJong v. Bell Helicopter Textron, Inc.*, 124 F.R.D. 207, 208 (W.D. Mo. 1988) (**quoting** *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204 (8th Cir. 1973)).

District courts have broad discretion to limit discovery and decide discovery motions. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993). The court's discretion to limit the scope of discovery exists so long as it has a good reason to do so. *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). As the Supreme Court has stated, because discovery rules should "'be construed to secure the just, speedy, and inexpensive determination of every action'. . . judges should not hesitate to exercise appropriate control over the discovery process." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (**quoting** *Herbert v. Lando*, 441 U.S. 153 (1979) and Fed. R. Civ. P. 1).

The federal rules do not forbid deposing the counsel of an opposing party. However, "[g]enerally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) (**citing** *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). The Eighth Circuit

4

has set the standard for such depositions in **Shelton** where the plaintiff sought to depose the defendant's in-house counsel. The Eighth Circuit stated:

> In recent years, the boundaries of discovery have steadily expanded, and it appears that the practice of taking the deposition of opposing counsel has become an increasingly popular vehicle of discovery. To be sure, the Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition. We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances.
>
> * * * *
>
> We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

**Shelton**, 805 F.2d at 1327 (internal citations omitted). The Eighth Circuit has described the **Shelton** standard as a "difficult burden . . . intended to guard against the 'harassing practice of deposing opposing counsel . . . that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.'" **Pamida, Inc. v. E.S. Originals, Inc.**, 281 F.3d 726, 729-30 (8th Cir. 2002) (**quoting Shelton**, 805 F.2d at 1330). Further, even when a party meets two of the **Shelton** factors by showing the information sought is nonprivileged and crucial, that party's failure to establish that the attorney deposition is the only reasonably practical means available for obtaining the information will still defeat an attempt to depose opposing counsel. **See Simmons Foods, Inc. v. Willis**, 191 F.R.D. 625, 630-31 (D. Kan. 2000) (applying **Shelton** test). In fact, "experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." **Simmons Foods**, 191 F.R.D. at 630 (citations omitted).

The court notes the counsel sought to be deposed is not current litigation counsel for the defendants, which was the situation for the attorneys sought to be deposed in ***Shelton***. ***Shelton***, 805 F.2d at 1327-30. However, the relationship between Mr. Stokes and the defendants is not completely separate from the instant case, as was the case in ***Pamida***. ***Pamida*** involved "two separate actions, one of which is completely concluded, i.e., the patent infringement case, and the second of which is currently pending and gave rise to this appeal, i.e., the indemnification case." ***Pamida, Inc.***, 281 F.3d at 730. In that case, Pamida brought an indemnification action against a company called Dynasty, seeking indemnification for amounts Pamida had paid in attorneys' fees and damages while defending and settling a different and previous lawsuit. The Eighth Circuit noted:

> The issues on which Dynasty seeks to depose the [Pamida] attorneys are central to the instant litigation and include what actions Pamida took to give Dynasty notice of the patent infringement action brought by Maxwell and its claim for indemnity from Dynasty as well as whether the $750,000 in attorneys' fees sought by Pamida were reasonably incurred in defending the patent infringement action.

***Id.*** at 729. The ***Pamida*** court noted that ***Shelton*** "was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." ***Id.***

> The ***Shelton*** test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. . . . Because this abuse of the discovery process had become an ever increasing practice, this Court erected the ***Shelton*** test as a barrier to protect trial attorneys from these depositions.

***Id.*** (**citing *Shelton***, 805 F.2d at 1327-29). The ***Pamida*** court concluded, however, that although the ***Shelton*** test did not apply to the depositions sought in that situation, the party seeking to depose counsel still had to "demonstrate that there has a been a waiver of the attorney-client privilege and that the work product privilege has either been waived or that the standard of the Federal Rule of Civil Procedure 26(b)(3) has been satisfied." ***Id.*** at 731.

Here, the plaintiffs contends the **Shelton** test does not apply because Mr. Stokes is a fact witness who "possesses significant non-privileged information and knowledge relevant to TSA's interlinked transactions in 1999 and 2000 with Digital Courier Technologies, Inc." **See** Filing No. 212, p. 2 (Plaintiffs' Brief). Additionally, the plaintiffs state Mr. Stokes is the only source of the information sought and the information is critical to the plaintiffs' case. *Id.* The plaintiffs state Mr. Stokes reviewed and supervised the drafting of the various licensing, distribution and stock purchase agreements between TSA and Digital Courier. The plaintiffs contend the interpretation of these agreements is critical to the factual record. The plaintiffs contend they are entitled to depose Mr. Stokes because he was the chief in-house counsel, when the agreements between TSA and Digital Courier were developed. These agreements, the plaintiffs allege, were intentionally created as a phony series of agreements, rather than a single transaction, in order to falsely recognize revenue. As evidence of Mr. Stokes involvement in the underlying business transactions, the plaintiffs refer to work done by Joseph F. Kenney, another TSA in-house counsel working under Mr. Stokes, and an electronic message which listed Mr. Stokes as a recipient. Additionally, the plaintiffs show there are undated handwritten notes "likely drafted by Duman" which state "Stokes in the loop with JE." The plaintiffs contends these notes, if written by Gregory Duman, who was TSA's Chairman of the Board and direct of Digital Courier at one time, show that Mr. Stokes was involved in the negotiations with James Egide, CEO of Digital Courier. Finally, the plaintiffs argue Mr. Stokes involvement in the current controversy was minimal as it predated the SEC's investigation and did not include drafting pleadings or motion practice.

The defendants show that Mr. Stokes was General Counsel for TSA from the founding of the company until April of 2003. **See** Filing No. 219 Exhibit A (Stokes Affidavit). Mr. Stokes advised TSA on a number of legal matters including litigation, but did not simply structure contracts or review business transactions. *Id.* Mr. Stokes did not make operating decisions for TSA. *Id.* The instant litigation began in November 2002, five months before his departure, within which time Mr. Stokes was in charge of coordinating the legal defense of this case, including frequent communications with and advice to the individual defendants. *Id.* Mr. Stokes participated in legal defense strategy discussions

and collection of litigation documents.  *Id.*  Mr. Stokes was also involved in the litigation of related lawsuits, including the preparation of motions to dismiss.  *Id.*  Mr. Stokes states he has no recollection of having any involvement in negotiating the terms and conditions of the agreements between Digital Courier and TSA.  *Id.* ¶ 9.

This case falls somewhere between ***Shelton*** and ***Pamida***.  However, the court concludes the ***Shelton*** test does apply.  Here, Mr. Stokes was never trial counsel, however he was involved with the defense strategy and the litigation of this case and similar actions against the defendants.  The plaintiffs have failed to show that Mr. Stokes has relevant, nonprivileged information.  Mr. Stokes denies he participated in the business transactions described by the plaintiffs and the plaintiffs' evidence does not contradict the denial.  Further, the plaintiffs fail to establish either (1) no other means exists to gain the desired evidence or (2) the information is crucial to the preparation of the case.  In any event, the defendants have met their burden of showing good cause exists to quash the subpoena and protect Mr. Stokes from a deposition in this matter on the topics described by the plaintiffs.

With regard to the portion of the subpoena requesting documents, the parties agree such request is moot upon the defendants' representation all responsive documents have been produced.  Accordingly, the court need not determine the merits of the document request.  Finally, the court finds no award of sanctions pursuant to Federal Rule of Civil Procedure 26(c), 30(d) and 37(a)(4) is warranted under the circumstances because the plaintiffs' resistence to the motion was substantially justified.  Upon consideration,

**IT IS ORDERED:**

The defendants' Amended Motion to Quash and Motion for Protective Order (Filing No. 192 in case 8:02CV553; Filing No. 236 in case 8:02CV561) is granted.

DATED this 19th day of May, 2006.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge